IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RITA D. REED,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     1:13CV713
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,                        )
                                 )
          Defendant.             )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff, Rita D. Reed, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The court has before it the certified administrative record and Defendant has filed a motion for judgment on the pleadings.

I.  **BACKGROUND**

Plaintiff filed an application for SSI on June 7, 2010, alleging a disability beginning on June 1, 2007. After her claim was denied initially (Tr. at 72) and upon reconsideration (Tr. at 89), Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which took place on April 16, 2012 (Tr. at 105). In a decision dated June 27, 2012, the ALJ denied Plaintiff's application. (Tr. at 17-27.) The ALJ found that Plaintiff had the following severe impairments: bipolar disorder; anxiety with panic attacks; OCD; and depression. (Tr. at 19.) The ALJ also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. (Id.)

The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with following nonexertional limitations: simple, routine repetitive tasks; no contact with the public; occasional contact with coworkers and supervisors for completion of job tasks; and non-production jobs entailing only routine changes. (Tr. at 20-21.) The ALJ determined that Plaintiff had no past relevant work but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy which she was capable of performing, including: cleaner, silver wrapper, and supply worker. (Tr. at 25-26.) Thus, the ALJ found that Plaintiff was not disabled. (Tr. at 26.) After unsuccessfully seeking review by the Appeals Council (Tr. at 1), Plaintiff filed the present action on August 29, 2013.

II. **ANALYSIS**

The Commissioner uses a five-step process to evaluate disability claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy. See 20 C.F.R. § 416.920(a)(4).

Plaintiff's arguments focus on the second and third step of the sequential analysis. In regards to Step 2, Plaintiff argues that the ALJ improperly concluded that Plaintiff's intellectual disability was not a severe impairment. (Pl.'s Br. Supporting Mot. to Reverse the Decision of the Commissioner of Social Security ("Pl.'s Br.") (Doc. 13) at 4.) In regards to Step 3, Plaintiff asserts that the ALJ erred in failing to consider whether Plaintiff's impairments met the requirements under Listing 12.05C (intellectual disability). (Id. at 3-6.)

**A.   Step 2: Severe Impairment**

Plaintiff argues that the ALJ improperly concluded that Plaintiff's intellectual disability was not a severe impairment.

As the ALJ listed Plaintiff's severe impairments in Step 2 of the sequential analysis, the ALJ included bipolar disorder, anxiety with panic attacks, OCD, and depression. (Tr. at 19.) The ALJ did not list "intellectual disability" as a severe impairment.

In determining whether the claimant has a severe impairment, an ALJ considers whether the claimant has an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). This requirement only requires a de minimis showing of severity. Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011). However, when an alleged severe impairment is based on a single I.Q. test, an ALJ has the "discretion to assess the validity of an I.Q. test result and is not required to accept it even if it is the only such result in the record." Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).

In a 2010 consultative psychological evaluation conducted by Dr. Jan D. Lhotsky, Plaintiff received a verbal comprehension I.Q. score of 70 and a full performance I.Q. score of 69. (Tr. at 246.) In her opinion, the ALJ rejected Plaintiff's assertion that the I.Q. scores met the 12.05C Listing. (Tr. at 20.) The

ALJ asserted, and it is undisputed, that the current I.Q. score was not supported with school testing prior to age 22 or independent testing to determine if the score was the product of Plaintiff's best efforts. (Id.) As explained by the ALJ, Plaintiff's statements to Dr. Lhotsky that she could read and write "pretty well," and the evidence of Plaintiff's adaptive functioning were inconsistent with this I.Q. score. (Tr. at 20, 25.)[1] As recognized in Hancock, the ALJ relied upon a comparison to Plaintiff's functioning, at least in part, in discrediting the I.Q. scores. Hancock, 667 F.3d at 476. This evidence supports the ALJ's finding that Plaintiff's alleged intellectual disability did not constitute a severe impairment. See Clark v. Apfel, 141 F.3d 1253, 1256 (8th Cir. 1998).

Accordingly, this court concludes that the evidence considered by the ALJ provides sufficient support for the ALJ's rejection of the I.Q. scores, and as a result, the ALJ did not err by excluding "intellectual disability" from the list of Plaintiff's severe impairments.

---

[1] This court also notes that while not expressly referenced by the ALJ, Plaintiff's long-term treating psychiatrist, Dr. W. Stuart Collins, never diagnosed intellectual limitation or made note of such a condition. (Tr. at 280 (noting a normal level of intellectual functions based on observations).) The record containing this entry was noted by the ALJ, who described the fact that Plaintiff's "mental status was normal" in January and March of 2009. (Tr. at 22.)

**B. Step 3: Listing 12.05C**

Plaintiff next argues that the ALJ did not sufficiently consider her impairments when determining if she qualified for Listing 12.05C.

A finding of "intellectual disability" under Listing 12.05C requires the satisfaction of three distinct prongs.[2] Claimant must show that she has "[a] valid verbal, performance, or full scale I.Q. of 60 through 70" ("Prong 1"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 2"). 20 C.F.R. Part 404, Subpart P, App. 1, 12.05C. Listing 12.05 also requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 3"). Id.

The ALJ found that Plaintiff established that she suffered from severe mental impairments, including bipolar disorder, anxiety with panic attacks, OCD, and depression (Tr. at 19),

---

[2] As Defendant recognizes in its brief, the Commissioner of Social Security recently replaced the term "mental retardation" with the term "intellectual disability" in Listing 12.05C. See 78 Fed. Reg. 46,449, 46501 (2013). The revision did not change the listing's substantive requirements. Id. The court uses the updated term and recognizes that this change does not alter any of the arguments made by either party.

satisfying Prong 2.  See Luckey v. U.S. Dep't of Health and Human Servs., 890 F.2d 666, 669 (4th Cir. 1989) (recognizing that finding a claimant suffers from a severe impairment establishes the significant work related limitation of function required by 12.05B).  However, the ALJ found that Plaintiff did not establish the other prongs, that is Prongs 1 and 3, of Listing 12.05C.

Plaintiff disputes this finding.  However, Plaintiff can prevail only if she establishes that the ALJ erred in her analysis of both Prong 1 and Prong 3.  Therefore, even if the ALJ's finding concerning Prong 1 of Listing 12.05C did not rest on substantial evidence, this court would still be required to affirm the ALJ's decision if her finding with regard to Prong 3 was based on substantial evidence.  As a result, this court considers whether substantial evidence existed to support the ALJ's findings with respect to Prongs 1 and 3.

### i. Prong 1

The first prong under 12.05C requires that Plaintiff demonstrate a valid full scale I.Q. score between 60 and 70.  As mentioned previously, the ALJ found that there was no evidence to corroborate the I.Q. test result where Plaintiff had a verbal

comprehension I.Q. score of 70 and a full performance I.Q. score of 69. Plaintiff makes two arguments in response.

First, Plaintiff argues that the ALJ did not give controlling weight to the finding of Dr. Lhotsky (the professional who performed the consultative psychological evaluation) that the I.Q. scores were consistent with Plaintiff's educational and vocational history. (Pl.'s Br. (Doc. 13) at 5; Tr. at 248.) First of all, the opinions generated after a "one-time evaluation by a non-treating psychologist," like the ones Dr. Lhotsky generated after the consultative psychological evaluation, are not entitled to controlling weight. Clark, 141 F.3d at 1256. Additionally, as explained above, the ALJ provided sufficient justification for disregarding the opinions based on the evaluation, and the court finds that there was substantial evidence to support the ALJ's decision.

Second, Plaintiff argues that the ALJ imposed additional requirements not found in the regulations when it required that Plaintiff file educational records and independent testing to corroborate the more recent I.Q. scores. (Pl.'s Br. (Doc. 13) at 4-5.) Plaintiff misinterprets the ALJ's opinion on this issue. The ALJ used the lack of school records and the lack of independent testing to support her decision to reject Dr.

Lhotsky's findings. (Tr. at 20.)  In doing so, the ALJ was not adding an additional requirement but merely citing some of her reasons for rejecting Dr. Lhotsky's findings, which included the fact that Plaintiff did not meet the adaptive functioning deficits.  (Id.)  See Hancock, 667 F.3d at 474-75.

### ii. Prong 3

Finally, the third prong of 12.05C requires that Plaintiff demonstrate "deficits in adaptive functioning initially manifested during the developmental period."  The ALJ concluded that Plaintiff did not exhibit the deficits of adaptive functioning to meet a 12.05C Listing.  Plaintiff objects to this conclusion.

"Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety." Atkins v. Virginia, 536 U.S. 304, 309 n. 3 (2002). What, precisely, will satisfy this prong of the inquiry are case-specific. Richardson v. Colvin, No. 8:12-cv-03507-JDA, 2014 WL 793069, at *11 (D.S.C. Feb. 25, 2014) (noting that there are "very few few bright-line rules").

Thus, although cases interpreting Listing 12.05 provide some guidance, what factors will establish or contradict such a finding are unique to each case. Compare Hancock, 667 F.3d at 475-76 (finding no deficit in adaptive functioning where claimant worked several jobs and performed a variety of tasks; shopped and paid bills; cared for three small grandchildren; did the majority of household chores, including cooking and baking; and that she does puzzles for entertainment), with Maresh v. Barnhart, 438 F.3d 897, 900 (8th Cir. 2006) (finding evidence of deficiencies in adaptive functioning where claimant attended special education classes; struggled with reading, writing and math; and dropped out of school in the ninth grade).

Here, the ALJ made a specific finding that the evidence failed to demonstrate deficits in adaptive functioning manifested before the age of 22 so as to meet this prong of Listing 12.05C. (Tr. at 20). The ALJ noted that Plaintiff has been married, has lived on her own and, at one time, had custody of her three children. (Tr. at 23-25, 245.) While she left school in seventh grade, she did so because she was pregnant. (Tr. at 20.) Since dropping out, she has been encouraged to get her GED. (Tr. at 257). Additionally, she is able to clean and to care for her personal needs; she had a driver's license in

the past; and she stated to the consultative examiner that she was able to read and write fairly well. (Tr. at 25, 37-39.) Additionally, the ALJ observed that Plaintiff's diagnosed mental impairments, such as bipolar disorder, panic attacks, and anxiety, accounted for any mental limitations and explained her inability to hold a job, retain custody of her children, etc. (Tr. at 25.)  These findings by the ALJ support the ALJ's decision that Plaintiff did not display deficiencies in adaptive functioning as a result of intellectual disability.

As evidence of her deficits in adaptive functioning, Plaintiff responds that: (1) she repeated two grades, (2) she left school in the seventh grade, (3) she cannot count money, (4) she had difficulty reading and understanding, (4) she is unable to follow a recipe, and (5) she has been unable to hold a job for an extended period of time.  (Pl.'s Br. (Doc. 13) at 5.) Although these pieces of evidence provide some support for the finding of deficiencies in adaptive functioning, the ALJ has the duty to find facts and consider the importance of conflicting evidence.  This court is not at liberty to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [the court's] judgment" for that of the ALJ.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  The court's review

stops when it finds the determination is supported by substantial evidence, as the ALJ's decision is here.

Plaintiff makes an additional argument that the court is required to presume that an I.Q. score is constant throughout life, making it easier for Plaintiff to prove that the mental deficiencies arose before age 22. (Pl.'s Br. (Doc. 13) at 5-6 (citing Luckey v. U.S. Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989)).) However, this argument does not address the ALJ's decisions that the I.Q. test was not corroborated by other medical evidence and that there were no deficiencies in adaptive functioning. Therefore, this court does not provide any further analysis on this point.

In sum, this evidence is sufficient to support the ALJ's finding of an absence of deficits in adaptive functioning. Accordingly, the ALJ's decision that the adaptive functioning prong of Listing 12.05C was not met was proper in light of the substantial evidence in the record. See Hancock, 677 F.3d at 475–76. Consequently, remand for further consideration of the issue is not warranted.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for judgment reversing the Decision of the Commissioner (Doc. 12) is **DENIED,** that Defendant's motion for judgment on the pleadings (Doc. 14) is **GRANTED,** and that this action is dismissed with prejudice. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 30th day of September, 2014.

/s/ William L. Osteen, Jr.
United States District Judge